## Voss v. Voss's Admrx., et al.

(Decided November 14, 1919.)

### Appeal from Campbell Circuit Court.

1. Appeal and Error—Necessity for Cross-Appeal—Questions Considered.—In the absence of a cross-appeal, errors relied on by appellees cannot be considered.

2. Partnership—Finding of Chancellor—Evidence.—In an action to settle an estate, evidence considered and held to sustain the finding of the chancellor that a son was not a partner of the decedent to the extent of a one-third ownership of the business, but was entitled only to a one-third interest in the profits of the business.

3. Executors and Administrators—Property Liable for Payment of Debts.—In the absence of a contrary provision in the will, debts of a decedent are payable out of his undevised personalty, if sufficient for that purpose, and not out of the personalty and real estate specifically devised.

4. Executors and Administrators—Debts of Decedent—Payment of Debts by Devisee—Contribution.—Where a devisee pays valid debts of the decedent out of undevised cash in his hands, he is subrogated to the rights of the creditors and entitled to credit for the sum so paid.

5. Executors and Administrators—Debts of Decedent—Payment of Debts by Devisee—Contribution.—Where a devisee, out of undevised assets in his hands, paid for lumber ordered by the testator but not delivered until after his death, he was not entitled to credit therefor as against the estate where the lumber was not delivered to the estate but was delivered to the devisee personally and used by him.

L. J. CRAWFORD for appellant.

GEORGE VEITH, JOHN T. HODGE and W. A. BURKAMP for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Frank B. H. Voss died a resident of Campbell county in February, 1917. He left surviving him his widow,

Caroline Voss, his son, Fred. Voss, his daughter, Gussie Kische, and four grandchildren, one of whom, Vera Cook, was the only child of Carrie Voss Cook, a deceased daughter, and two of whom, Allison F. Voss and Arthur H. Voss, were sons of John Voss, a deceased son, and Verna Velora Voss, the only child of Frank Voss, another deceased son.

For several years prior to his death, the decedent had been engaged in operating a planing mill and retail lumber business in Newport, and the bulk of his personal estate was invested in that business. At the time of his death he owned personal property of the value of $40,000.00, and real estate of about the same value. He left the following will:

"WILL. I, Frank B. H. Voss, generally known by the name as Frank Voss, do hereby will my Planing Mill, Lumber Yard and ground located on West Seven street in Newport, Campbell county, Kentucky, to my son, Fred Voss.

"This is my will written by myself and signed this 30th day of June, 1915.

"(Signed) FRANK B. H. VOSS."

The will was probated, and the county court appointed the widow, Caroline Voss, as administratrix with the will annexed. Thereupon, she brought this action for a settlement of the estate. The court held that all the property used in connection with the planing mill and lumber yard passed under the will to Fred Voss, with the exception of certain accounts and cash on hand. The widow was awarded her share of the personal property and the value of her dower in the planing mill and other property. Because of her claim of dower in the planing mill property, the other heirs of Frank B. H. Voss were required to contribute to Fred Voss. Fred Voss asserted a one-third interest in the planing mill business as the partner of his father. In lieu of this claim, the commissioner and the court both held that he had only a one-third interest in the profits of the business. It appeared that Fred Voss had in his possession the sum of $2,509.83 in cash, and the further sum of $4,324.54, collected accounts. He asked that he be allowed credit for the sum of $1,102.37, which he paid on accounts for merchandise sold and delivered to the firm prior to the death of Frank Voss, for the sum of $2,100.00, the balance due on a truck purchased by the firm prior to the death of Frank Voss,

and $2,176.61 paid for lumber which was also purchased prior to the death of Frank Voss, but these credits were denied. The administratrix was allowed $800.00 for her services and her attorney $500.00 for his services. From this judgment Fred Voss, alone, has appealed, and neither the administratrix nor the other appellees have prosecuted a cross-appeal.

In view of the failure of the administratrix and the other appellees to prosecute a cross-appeal, we cannot consider the errors upon which they rely.

Fred Voss first complains of the failure of the court to adjudge that as the partner of his father he was the owner of a one-third interest in the planing mill and lumber yard business, as well as in the profits. On this question it was made to appear that the decedent told several persons that his son, Fred, was a partner in the business. It was also shown that certain insurance policies, at the direction of Frank Voss, were made out in the name of Frank Voss & Son, that when the old stationery was exhausted, new stationery was taken out in the name of Frank Voss & Son, that the sign on the truck was made to read, "Frank Voss & Son," and that numerous advertisements were carried in their joint name. However, an expert accountant, who testified that Frank Voss told him that Fred Voss was a one-third owner of the business, stated that he told Frank Voss that the books should be changed so as to represent that Fred Voss had such an interest. Whereupon, Frank Voss told him to make an entry placing to the credit of Fred Voss only one-third of the profits for the year 1915, and so far as the books were concerned, this was the only entry showing the partnership. Though it may be true that some of Frank Voss' statements would indicate that Fred Voss had a one-third interest in the business, yet, construing all of the evidence in the light of the fact that when he came to act in the matter he plainly indicated that Fred Voss was to have only a one-third interest in the profits. and further indicated by his will that no interest in the property should pass to Fred Voss until he himself died, we see no reason to disturb the finding of the chancellor that the only interest which Fred Voss had in the business prior to his father's death was a one-third interest in the profits.

With respect to Fred Voss's claim that he should be given credit for the sums which he paid on the decedent's

debts, we find that the sum of $1,102.37 was paid for lumber which was purchased by, and delivered to, the decedent prior to his death, and that the further sum of $2,100.00, also paid by Fred Voss, was a balance due on a truck that had also been purchased by, and delivered to, the decedent prior to his death. The chancellor construed the will as passing to Fred Voss not only the real estate occupied by the planing mill, but the lumber, trucks and other personalty used in the operation of the mill. This property was not charged with the payment of decedent's debts. Besides the property specifically bequeathed and devised, the decedent had other personal and real property which passed to his heirs as undevised estate. There being no contrary provision in the will, the debts of the decedent were payable out of his undevised personalty, if sufficient for that purpose, and not out of the personalty and real estate specifically devised. 11 R. C. L., sec. 133, page 127; Trumbo v. Sorrency, 35 B. Mon. 284, 16 Am. Dec. 103. Since these debts were valid and were paid by Fred Voss, the effect is the same as if the money had been turned over to the administratrix and used by her to pay the debts. Under these circumstances, Fred Voss was subrogated to the rights of the creditors whose debts he paid, and should have been given credit therefor. But the same rule cannot be applied to the $2,176.61 paid for lumber ordered by the decedent, but not delivered until after his death. This lumber was not a part of the decedent's estate and did not pass under the will. It was never delivered to the estate, but was delivered to Fred Voss himself. He used the undevised cash in his hands to pay for the lumber which he personally received. If he should be credited with the sum so paid, the result would be to give him property which did not pass under the will. Having received and used the lumber himself, he must account to the estate for the purchase price which he paid out of undevised assets in his hands.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.